**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**IVETH MARTINEZ,**

    *Plaintiff*,

**v.**                                          **Case No. SA-23-CV-1366-JKP**

**KIRKLAND'S, INC.,**

    *Defendant*.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion for Summary Judgment (ECF No. 22) filed by Defendant Kirkland's, Inc. ("Kirkland's" or simply "Defendant"). With the filing of Plaintiff's response (ECF No. 24) and Defendant's reply (ECF No. 25), the motion is ripe for ruling. For the reasons that follow, the Court **DENIES** the motion for summary judgment.

## I. BACKGROUND[1]

Plaintiff filed her Original Petition (ECF No. 1-2) in a Bexar County, Texas state court, and brings a premises liability cause of cause against Defendant in this case. Plaintiff alleges she was shopping at Defendant's store located at 8319 Agora Parkway, Selma, Texas. *Id*. On November 9, 2022, Plaintiff visited Defendant's store. ECF No. 24 at 2. While browsing in an aisle of the store, she knelt to examine a lamp that was on the floor. *Id*. As she knelt to inspect the lamp, several metal-framed mirrors which were leaning against a table behind her fell on her. *Id*. at 3. The mirrors struck Plaintiff on her left shoulder and neck. *Id*.

Defendant's recitation of the factual background is similar to Plaintiff's, but provides additional detail based on a video recording of the incident. When Plaintiff knelt down to look at the lamp, a customer was across the aisle behind her looking at the mirrors which were leaning against

---

[1] The factual background is uncontested unless otherwise noted. The Court considers disputed facts in the light most favorable to the non-movant as required through the summary judgment process.

a table. ECF No. 22 at 2. The mirrors were stacked vertically and leaning at an angle against the table. *Id*. The unidentified customer grabbed a mirror from the back of the stack, and they fell forward and hit Plaintiff on her left shoulder. *Id*.

Defendant presents two arguments for summary judgment: (1) Plaintiff was not injured as a result of an unreasonably dangerous condition on the premises and (2) Defendant's negligence, if any, was not the proximate cause of Plaintiff's injuries. The parties submitted the following evidence for the Court's consideration: (1) excerpts from Plaintiff's deposition; (2) excerpts from Kirkland's Store manager, Maximo Betancourt; (3) the incident report; (4) video of the incident; and (5) Kirkland's merchandise catalog.[2]

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting

---

[2] The parties' evidence overlaps to some extent. Defendant attached the following evidence to its motion: (1) excerpts of Plaintiff's deposition as Exhibit A; (2) video of the incident as Exhibit B; (3) incident report as Exhibit C; and (4) excerpt of Maximo Betancourt's deposition as Exhibit D. *See* ECF No. 22 at 2. Plaintiff attached the following evidence to her response: (1) deposition of Maximo Betancourt as Exhibit 1; (2) incident report as Exhibit 2; (3) Defendant's visual merchandise catalog as Exhibit 3; (4) Plaintiff's deposition testimony as Exhibit 4; and (5) video of the incident, which is identified as Defendant's Exhibit B. *See* ECF No. 24 at 2.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This includes identifying those portions of the record that the party contends demonstrate the absence of a genuine dispute of material fact. *Id*. When seeking summary judgment on an affirmative defense, the movant "must establish beyond peradventure" each essential element of the defense. *Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

But when "the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a genuine dispute] of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (quoting *In re: La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)). The movant need not "negate the elements of the nonmovant's case." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis omitted) (parenthetically quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (en banc)). In these instances, however, the movant must "point[] out that there is no evidence to support a *specific element* of the nonmovant's claim"; rather than making "a conclusory assertion that the nonmovant has no evidence to support his *case*." *Id*. at 335 n.10.

Once the movant has carried its summary judgment burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Additionally, courts

have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

### III. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, *see* Notice of Removal (ECF No. 1) ¶ 3, the Court must "apply Texas law," *Ocwen Loan Servicing, LLC v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987). The parties agree that Texas law applies to this diversity action.

### IV. ANALYSIS

Texas law provides "two theories of liability available to injured invitees." *Olivarez v. Wal-Mart Stores Tex., LLC*, No. 5:21-CV-0840-OLG, 2023 WL 3035416, at *3 (W.D. Tex. Feb. 7, 2023) (recommendation of Mag. J.) *accepted by* 2023 WL 3035407 (W.D. Tex. Mar. 2, 2023).

> Depending on the circumstances, a person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply.

*Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). "Negligence and premises liability claims thus are separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017). These claims "are based on independent theories of recovery" and "are not interchangeable." *Id*.

The only claim at issue in this case is one for premises liability. Under Texas law, a premises liability claim has four elements:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).

For an invitee plaintiff, "the premises liability inquiry focuses on whether [the defendant] proximately caused [the plaintiff's] injuries by failing to use ordinary care to reduce or to eliminate an unreasonable risk of harm created by a premises condition that it knew about or should have known about." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). "Under premises-liability principles, a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances." *Jenkins*, 478 S.W.3d at 644. Unless the defendant owes the plaintiff "a duty to warn of or ensure against" the asserted dangerous condition, a premises liability claim necessarily fails. *Walker v. UME, Inc.*, No. 03-15-00271-CV, 2016 WL 3136878, at *2 (Tex. App. – Austin June 3, 2016, pet. denied).

"Whether a condition is unreasonably dangerous is often a fact question." *Pay & Save, Inc. v. Canales*, 691 S.W.3d 499, 502–03 (Tex. 2024) (citing *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 (Tex. 2022)). The Texas Supreme Court has consistently held that common or innocuous hazards are not unreasonably dangerous as a matter of law. *Id*. Under the Texas Supreme Court's doctrine of common conditions, "the standalone fact that a condition has caused an injury does not make it unreasonably dangerous." *Id*. (citing Christ v. Tex. Dep't of Transp., 664 S.W.3d 82, 87 (Tex. 2023)).

This doctrine protects property owners from "what would otherwise essentially be strict

liability." *Id*. (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 676 (Tex. 2004); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000)). Otherwise, "a grocery store and everything in and around it could be characterized as unreasonably dangerous." *Id*. (citing *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006)). "This is because it will almost always seem true, in retrospect, that just one more step could have been taken to prevent an injury." *Id*. "To ensure that hindsight does not become an occasion for imposing limitless liability," the Texas Supreme Court has "said that landowners are neither insurers of a visitor's safety nor required to make a premises foolproof." *Id*. "In short, the mere possibility of harm that accompanies every condition in existence provides no basis for a tort claim." *Id*.

"A condition is unreasonably dangerous if 'there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 803 (Tex. 2022) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)). Courts consider "whether the relevant condition was clearly marked, its size, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, and whether it was naturally occurring." *Id*.

The facts of this case are analogous to the facts in *Plainview Motels, Inc. v. Reynolds*, 127 S.W. 3d 21 (Tex. App.—Tyler 2003, pet. denied). Plainview Motels, Inc., doing business as Surplus Sales, had a display of mirrors which were vertically stacked against each other and leaned at a slight angle against a two-by-four support post. *Id*. at 29–30. Surplus Sales understood customers would sift through its merchandise, select an item, and take it to the checkout area. *Id*. at 30. Phillip Reynolds ("Dr. Reynolds") was shopping at Surplus Sales with his wife and son. *Id*. at 28. Dr. Reynolds, while shifting through a stack of mirrors, stood several mirrors upright or vertically to examine mirrors further back in the stack. *Id*. The following quoted language explains the accident which resulted in the Reynolds' filing of the lawsuit.

6

> As Dr. Reynolds reached for and erected another group of mirrors, the bottom of these mirrors slipped and crashed against the other group of mirrors Dr. Reynolds was already steadying. The force of the crash caused the group of mirrors Dr. Reynolds was steadying to fall over onto Dr. Reynolds and Dillon, who was standing at Dr. Reynolds's feet. Dr. Reynolds sustained injuries to his back, knees and hand. Dillon, while under the mirrors, stopped breathing and lost consciousness. Once Dillon was pulled from beneath the mirrors, Mrs. Reynolds successfully resuscitated him and he was taken to the hospital where he received emergency medical attention. At one point, Dillon lost kidney function for approximately twenty-four hours, but ultimately recovered from his injuries. Both Dr. and Mrs. Reynolds sustained multiple lacerations as a result of the accident.

*Id.*

The Court recognizes the distinction between the stages of litigation in the *Reynolds* case and the present case. Reynolds was an appeal of a jury verdict which challenged the factual and legal sufficiency of the trial court's judgment. *Id*. at 28–29. The present matter involves the Court's resolution of a motion for summary judgment. This distinction does not diminish the similarity between the basic underlying facts regarding the stack of mirrors and the Court's analysis concerning whether the mirrors in this case constitute an unreasonably dangerous condition.

In this case, there were nine mirrors stacked on top of one another. Betancourt Depo. (Pl.'s Ex. 1) 23:4-9. The mirrors were leaning on a table, and Defendant did not use an anti-tip device or brackets to hold them in place. *Id*. 48:1-4. Mr. Betancourt does not know the exact height and weight of the mirrors. *Id*. 73:10-17. The mirrors in the area of the accident came in two sizes, and Mr. Betancourt only saw the smaller sized mirrors of the floor. *Id*. He described the mirrors as "a little" heavy. *Id*. There were no obstructions in the aisle where the incident occurred, and the area was well lit. *Id*. 45:1-10.

Mr. Betancourt also testified that the table the mirrors were leaning on was secure, sturdy, and had locks on the wheels. Def.'s Ex. D (Dep. of Betancourt) 66:4-12. He stated, "if [the mirrors] were to have fallen, someone was probably moving them or looking at them, for that matter, for them to have fallen." *Id*. He also stated, "[w]e lean them, of course, a little bit where they're not going to just fall by themselves. So, with the leaning, and then, of course, the carpet kind of holds

them in place, as well." *Id*. 93:15-24. Kirkland's does not allow more than ten mirrors to be stacked together. *Id*. 95:11-14. The mirrors are leaned against the table to prevent them from tilting forward. *Id*. 95:6-10.

> The customer incident report states:
>
> Customer was looking at lampstand was bent down when another customer was looking at mirrors behind her. As she was looking at the mirrors 5 mirrors fell on the customers [sic] left back shoulder causing her to fall on her side. After that customer came to the front register to let the Manager know what had happened.

Def.'s Ex. C at 1.

Just as the court in *Reynolds* explained, the nature of Kirkland's business is that customers browsing through its aisles will touch, inspect, and examine merchandise. In this case, it is reasonable to expect that customers will sift through stacks of mirrors as part of the shopping process. The unidentified customer grabbed a mirror from the back of the stack of nine mirrors which triggered the mirrors in front to fall forward and hit Plaintiff. ECF No. 22 at 2 (citing Def.'s Ex. B (Video of the Incident)). Here, the stack of mirrors consisted of larger mirrors, which were deeper in the stack, and smaller mirrors, which were in front of the larger mirrors. When the unidentified customer began to sift through the larger mirrors toward the back of the stack, the mirrors fell on Plaintiff. The Court disagrees with Defendant's assertion that the stack of mirrors here are the type of commonplace innocuous hazards the Texas Supreme Court has determined are not unreasonably dangerous conditions. *See id.* at 7. The Court cannot definitively state, as a matter of law, that a stack of large and small mirrors, leaning against a table in an aisle used by browsing customers, is not an unreasonably dangerous condition. The evidence presented establishes that there is a genuine dispute of material fact regarding the presence of an unreasonably dangerous condition. The Court also concludes that there is a genuine dispute of material fact regarding the proximate cause of Plaintiff's injuries in this case.

8

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion for Summary Judgment (ECF No. 22) filed by Defendant Kirkland's, Inc. In denying the motion, the Court did not consider any argument raised for the first time in Defendant's reply.

**IT IS SO ORDERED this 5th day of February 2026.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

9